JEFFREY D. DINTZER (SBN 139056)
jeffrey.dintzer@alston.com
JEFFREY P. CARLIN (SBN 227539)
jeff.carlin@alston.com
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, California 90071
Telephone:  (213) 576 1000
Facsimile:   (213) 576 1100

Attorneys for Plaintiff
GOORDICH CORPORATION

*Additional Plaintiffs & Counsel Listed on Signature Page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOODRICH CORPORATION; AMERICAN PROMOTIONAL EVENTS, INC - WEST.; BLACK & DECKER INC.; EMHART INDUSTRIES, INC.; KWIKSET LOCKS, INC.; PYRO SPECTACULARS, INC.; and WHITTAKER CORPORATION,<br><br>                    Plaintiff,<br><br>v.<br><br>CITY OF RIVERSIDE and UNITED STATES OF AMERICA,<br><br>                    Defendants. | Case No.  5:24-cv-2640<br><br>**COMPLAINT FOR RECOVERY OF RESPONSE COSTS AND DECLARATORY RELIEF**<br><br>**COUNT I - CERCLA COST RECOVERY: 42 U.S.C. § 9607(A)**<br><br>**COUNT II – CERCLA DECLARATORY RELIEF: 42 U.S.C. § 9613(G)(2)**<br><br>**COUNT III – DECLARATORY RELIEF: 28 U.S.C. § 2201(A)** |

# I.    INTRODUCTION

1.    Plaintiffs Goodrich Corporation, American Promotional Events, Inc.-West, Emhart Industries, Inc., Kwikset Locks, Inc., Black & Decker Inc., Pyro Spectaculars, Inc., and Whittaker Corporation bring this action to establish their rights under federal law and to obtain a judicial declaration that the City of Riverside ("the City") may not conduct any remedial action to address alleged contamination from the Rockets, Fireworks, and Flares Superfund Site ("RFF Superfund Site") without approval by the United States Environmental Protection Agency ("USEPA"), in accordance with section 122(e)(6) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. section 9622(e)(6), and *Atlantic Richfield Co. v. Christian*, 140 S.Ct. 1335 (2020) ("*Atlantic Richfield*").  Plaintiffs also seek to recover from the City the response costs they have incurred and will incur in connection with the investigation of hazardous substances in the City's Flume Wells, pursuant to a cost recovery claim under CERCLA section 107(a), 42 U.S.C. section 9607(a), and an accompanying declaratory relief claim for future response costs under CERCLA section 113(g)(2), 42 U.S.C. section 9613(g)(2).

2.    This case arises from historical operations by Plaintiffs, the United States, and other parties on a 160-Acre Parcel in Rialto now known as the RFF Superfund Site.

3.    In 2009, the City filed a lawsuit against Plaintiffs and other defendants in Los Angeles County Superior Court ("State Court Action"), alleging that historical operations at the RFF Superfund Site released perchlorate that reached the groundwater and then migrated into the City's Flume Wells over eight miles away. The City's operative First Amended Complaint in the State Court Action alleges causes of action against Plaintiffs for negligence, trespass, and public nuisance, seeking damages for alleged future costs to remediate perchlorate in its Flume Wells.  Prior to the City's filing of the State Court Action, and beginning in 2004,

various federal actions regarding the RFF Superfund Site were pending against Plaintiffs and other parties in this Court involving the very same perchlorate contamination at issue in the State Court Action ("Consolidated Federal Actions"). The City's State Court Action was stayed on May 29, 2009, pending the resolution of the Consolidated Federal Actions.

4.　Having assumed jurisdiction, on January 25, 2010, USEPA completed a Remedial Investigation/Feasibility Study ("RI/FS") for the Source Area Operable Unit ("SAOU" or "OU1") of the RFF Superfund Site.  The RI/FS was published on behalf of USEPA, which designated an "Interim Source Area Operable Unit" to begin addressing groundwater contamination at the RFF Superfund Site.

5.　On March 8, 2010, the City submitted comments to USEPA on the RI/FS, asserting that it detected perchlorate from the RFF Superfund Site in one of its wells located approximately seven miles downgradient of the RFF Superfund Site.  Based on the available data, however, USEPA disagreed with the City's conclusion that contamination from the RFF Superfund Site reached the City's Flume Wells.

6.　On September 30, 2010, USEPA issued its "USEPA Superfund Interim Action Record of Decision" ("2010 Interim ROD") for OU1, which required installation, operation, and maintenance of a groundwater pump and treatment system for a defined target area extending approximately 1.5 miles downgradient from the RFF Superfund Site.  The RI/FS for the Mid-Basin Operable Unit ("OU2") was ordered to be completed in two phases.  Goodrich completed the Remedial Investigation ("RI") in 2013 and the Feasibility Study ("FS") in June 2021, which USEPA published in January 2022.

7.　On July 2, 2013 (for Goodrich, Emhart, APE, and Whittaker) and on March 18, 2013 (for Pyro Spectaculars), this Court entered three Consent Decrees as final judgments in the Consolidated Federal Actions.  These Consent Decrees provided for Plaintiffs, along with the United States Department of Defense and

other parties, to fund, or fund and implement, cleanup of perchlorate contamination from the RFF Superfund Site "wherever it may come to be located," under the oversight of USEPA, which was the lead Plaintiff in the Consolidated Federal Actions.

8.    USEPA published another Record of Decision ("ROD") on September 2, 2022 ("2022 ROD"), selecting the final remedy to clean up off-site groundwater contamination from the RFF Superfund Site for OU2: "a groundwater extraction and treatment system intended to protect human health by preventing exposure to groundwater affected by [RFF Superfund] Site contaminants, protect drinking water supply wells threatened by Site-related contamination, and protect and restore the groundwater resource…. [T]his second remedy addresses contaminated groundwater that has moved past (i.e., downgradient of) the area targeted by EPA's SAOU [OU1]."  The City submitted comments on the RI/FS for OU2 prior to USEPA's adoption of the ROD, to which USEPA responded.  The City did not ask USEPA for approval to remediate perchlorate in the City's Flume Wells, nor did USEPA authorize the City to undertake such remedial action.

9.    Following entry of the Consent Decrees in the Consolidated Federal Actions, the stay in the City's State Court Action was lifted on September 12, 2014, and the City filed its operative First Amended Complaint on March 18, 2018, seeking as damages its past and alleged future costs to investigate, monitor, and remediate perchlorate in its Flume Wells.  Plaintiffs, joined by all the then-named defendants to the State Court Action, moved to dismiss, pursuant to California Code of Civil Procedure section 389, on the grounds that the City failed to join the United States as a necessary and indispensable party.  On June 12, 2018, the motion was granted, and the State Court Action was dismissed without prejudice.  On May 6, 2020, the Court of Appeal reversed the dismissal and directed the trial court to enter an order denying the motion.  The State Court Action is currently proceeding in the Los Angeles County Superior Court.

10.     CERCLA section 122(e)(6) prohibits remedial action by a potentially responsible party ("PRP") at a CERCLA facility that has not been approved by USEPA.  In *Atlantic Richfield v. Christian*, 140 S. Ct. 1335 (2020), the U.S. Supreme Court held that owners of property where contamination from a Superfund Site has "come to be located" are PRPs as a matter of law.  Under CERCLA section 122(e)(6), those PRPs are prohibited from undertaking any remedial action not approved by USEPA, and the Supreme Court held in *Atlantic Richfield* that those PRPs likewise cannot recover tort damages in state court for such remedial activities.

11.     On October 31, 2022, Plaintiffs filed a motion to dismiss the City's State Court Action without prejudice under CERCLA section 122(e)(6).  Plaintiffs argued that the City is an alleged PRP because it asserts in its First Amended Complaint that it owns wells that have been contaminated by perchlorate originating from the RFF Superfund Site. Plaintiffs argued that if, as the City contends, its wells have been affected by contamination from the RFF Superfund Site, then those wells are part of the RFF Superfund Site "facility" as a matter of law.  Because USEPA has not approved the remediation for which the City seeks future damages, the City may not undertake remedial action or recover related tort damages for any contamination that allegedly originates at the RFF Superfund Site.

12.     In a January 30, 2023, ruling, the state court agreed that the City is a PRP and thus subject to CERCLA section 122(e)(6).  However, the state court stated that the long-term perchlorate treatment system that the City claims it might implement is not a "remedial action" and therefore is not covered by CERCLA section 122(e)(6).  In reaching this non-final ruling the state court disregarded the plain language of CERCLA and the robust body of caselaw distinguishing "removal actions," which are short-term, time-sensitive actions taken in response to an imminent threat to public health, from "remedial actions," which are long-term, permanent cleanups like the one the City claims it will pursue.  Certain Plaintiffs

filed a petition for writ of mandate in the Court of Appeal, which was dismissed on May 12, 2023, on the grounds that the need for "extraordinary writ relief" had not been shown.

13.    The United States, through USEPA, is aware of the City's State Court Action against Plaintiffs seeking remediation of the City's Flume Wells for contamination the City claims is originating from RFF Superfund Site.  But USEPA, as the agency charged with enforcing federal law, has not taken any steps to ensure the City complies with CERCLA section 122(e)(6) and *Atlantic Richfield*.

14.    Perchlorate is a hazardous substance under CERCLA.

15.    The City's Flume Wells are part of the City's water supply system and are operated by the Riverside Public Utilities ("RPU").  The City's Flume Wells are located in the cities of Grand Terrance and Colton, California, north of the city of Riverside, in a mixed urban and undeveloped area.

16.    RPU serves approximately 310,500 people through about 65,000 service connections within a service area of 75 square miles.  The RPU contains over 50 wells located in well fields that produce groundwater from the Bunker Hill Basin, Riverside North Groundwater Basin, Riverside South Groundwater Basin, and Rialto/Colton Groundwater Basin.  The City's Flume Wells are located in the Riverside North Groundwater Basin, and are located either adjacent to, or, in the case of Flume Well 5, in the Santa Ana River.  Specifically:

      a.  Flume Well 1 is used as a monitoring well located in the Riverside North Groundwater Basin;

      b.  Flume Well 2 is a potable well located in Riverside North Groundwater Basin;

      c.  Flume Well 3 is a potable well located in Riverside North Groundwater Basin;

      d.  Flume Well 4 is a potable well located in Riverside North Groundwater Basin;

e.  Flume Well 5 is a monitoring well located in Riverside North Groundwater Basin;

f.  Flume Well 6 is a potable well located in Riverside North Groundwater Basin;

g.  Flume Well 7 is a potable well located in Riverside North Groundwater Basin;

17.    Perchlorate has been detected at low concentrations in the City's Flume Wells[1], some of which are drinking water supply wells, allegedly threatening human health and/or the environment.  The detections of perchlorate in the City's Flume Wells have always been below the California maximum contaminant level for drinking water of 6 parts per billion ("ppb").

18.    There are multiple potential sources of perchlorate in the vicinity of the City's Flume Wells in the Riverside North Groundwater Basin and Rialto/Colton Groundwater Basin, including the RFF Superfund Site.  However, prior to the issuance of the ROD for the RFF Superfund Site, the City did not ask USEPA for approval to remediate perchlorate in the City's Flume Wells, nor did USEPA authorize the City to undertake such remedial action.  USEPA concluded that the available data did not support the City's contention that perchlorate from the RFF Superfund Site had migrated to the Flume Wells.  At the same time, the City insists that contamination detected in the City's Flume Wells, including perchlorate, did come from the RFF Superfund Site.  Plaintiffs are caught in the middle of the City's contentions and USEPA's contrary determination based on the facts available to USEPA in 2022, and therefore have incurred response costs to investigate the potential sources of hazardous substances in and near the City's Flume Wells, as detailed below.

19.    To date, USEPA, the federal government agency responsible for

---

[1] The City's Flume Wells listed in paragraph 16(a)-(g) are referred to collectively as the "Flume Wells."

COMPLAINT FOR RECOVERY OF RESPONSE COSTS AND DECLARATORY RELIEF

overseeing the cleanup of all contamination from the RFF Superfund Site has declined to include remediation of the City's Flume Wells in the Superfund remedy because of its conclusion that the available data does not support a finding that contamination has migrated from the RFF Superfund Site to the City's Flume Wells. Nevertheless, the City is pursuing its State Court Action against Plaintiffs, without involving the United States, which is the lead agency responsible for directing the investigation and remediation of contamination from historical activities at the RFF Superfund Site and is also a signatory to the Consent Decrees for the RFF Superfund Site.  Through its State Court Action, the City seeks to compel Plaintiffs to fund the same remediation USEPA has declined to initiate.

20.    Plaintiffs initiated a preliminary assessment in compliance with the National Contingency Plan ("NCP"), 40 C.F.R. sections 300.400 and 300.700, to identify the potential source or sources of contamination, including perchlorate, found in the City's Flume Wells.  As a result, Plaintiffs have incurred and will continue to incur investigatory costs that are necessary and in compliance with the NCP.

21.    Plaintiffs, therefore, pursue this federal action to recover from the City the response costs they have incurred and will incur in connection with the investigation of contamination, including perchlorate, identified in the City's Flume Wells.

22.    Plaintiffs also seek a declaration of their rights under federal law, with participation by the United States which, through USEPA, is required by CERCLA to determine whether the City may undertake remediation of perchlorate contamination allegedly originating from the RFF Superfund Site.  Plaintiffs seek a judicial declaration that the City may not conduct any remedial action to address alleged contamination from the RFF Superfund Site without approval by USEPA or USEPA's removal of the RFF Superfund Site from the list of Superfund sites, in accordance with section 122(e)(6) of CERCLA, 42 U.S.C. section 9622(e)(6), and

*Atlantic Richfield*.  The requested judicial declaration would address a dispute arising exclusively under federal law regarding the authority of USEPA to control Superfund sites, select a uniform remedy, and ensure that inconsistent remedies do not worsen the problem that legacy contamination poses to the environment or public health or overburden stakeholders with unnecessary or counterproductive costs of investigation and cleanup.

23.    This Court is uniquely situated to resolve issues arising under CERCLA and controlling Supreme Court precedent. *See* 42 U.S.C. § 9613(b).

## II.    PARTIES

24.    Plaintiff Goodrich Corporation, at all relevant times, is a New York Corporation doing business in California with its principal place of business in Charlotte, North Carolina.  Goodrich formerly researched, developed, and manufactured solid rocket propellant on behalf of the federal government at facilities located within the RFF Superfund Site.

25.    Plaintiff American Promotional Events, Inc.-West ("APE"), formerly known as American Promotional Events, Inc., at all relevant times, is a California Corporation doing business in California with its principal place of business in Fullerton, California.  APE imports, stores, distributes and sells "Safe and Sane" fireworks that are already manufactured and packaged in sellable form from a location within the 160-Acre Area.

26.    Plaintiff Kwikset Locks, Inc., is a dissolved California Corporation, ("KLI").  KLI was dissolved in 1958.  Prior to its dissolution, KLI owned all of the stock of a munitions loading company West Coast Loading Corporation ("WCLC").  Between 1952 and 1957, WCLC loaded flares and various pyrotechnic devices, some of which contained perchlorate, for the United States Army and Navy on the 160-Acre Parcel.  In 1957, WCLC shut down all its operations, discharged its debts, and was merged into KLI.

27.    In 1958, KLI dissolved, and its assets were transferred to its parent, The

American Hardware Corporation, a Connecticut corporation ("AHC").  Later, through corporate restructuring and name changes, AHC became Plaintiff Emhart Industries, Inc., a Connecticut corporation ("Emhart").

28.    In March 2002, Emhart was dissolved in accordance with Connecticut law and its assets were transferred to Plaintiff Black & Decker Inc. ("BDI").  Plaintiff BDI, at all relevant times, is a Delaware Corporation.

29.    KLI, which as a result of its dissolution has not been permitted under California Corporate law to conduct any business since its dissolution in 1958, and Emhart, which as a result of its dissolution has not been permitted under Connecticut law to conduct any business since its dissolution in 2002, bring this action solely in connection with their continuing obligation, under California and Connecticut Corporate law, respectively, to wind down their corporate affairs.

30.    Plaintiff Pyro Spectaculars, Inc., at all relevant times, is a California Corporation doing business in California with its principal place of business in Rialto, California.  Pyro Spectaculars is a fireworks display company with its main offices at a portion of the 160-acre parcel area located within the RFF Superfund Site.

31.    Plaintiff Whittaker Corporation, at all relevant times, is a Delaware Corporation doing business in California with its principal place of business in Simi Valley, California.

32.    Defendant City of Riverside, at all relevant times, is a municipal corporation and charter city organized and existing under the Constitution and laws of the State of California and located in Riverside County, California.

33.    Defendant United States of America is named as a "necessary" party under Rule 19(a) of the Federal Rules of Civil Procedure, based upon the activities and responsibilities of USEPA, the Department of Defense, and other federal agencies.  Since September 2009, USEPA has been the lead federal agency at the RFF Superfund Site and has been responsible for directing the investigation and

remediation of contamination from historical activities at the RFF Superfund Site. USEPA selected the remedy for groundwater contamination from activities at the RFF Superfund Site and governs and oversees the cleanup efforts at the RFF Superfund Site.  The United States and USEPA are signatories to the Consent Decrees for the RFF Superfund Site, and certain federal agencies are PRPs at the Site.

## III.    JURISDICTION AND VENUE

34.    This Court has jurisdiction over this action in accordance with 28 U.S.C. section 1331, 42 U.S.C. section 9613(b), and 28 U.S.C. section 2201.

35.    Venue is proper in the Central District of California under 28 U.S.C. section 1391(b) and 42 U.S.C. section 9613(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district and the property that is the subject of the action is located in this district.  In addition, defendant City of Riverside resides in this district.

## IV.    COMMON ALLEGATIONS

**A.    Historical Uses of the RFF Superfund Site**

36.    During World War II, the United States Department of the Army (now the Department of Defense) developed a 2,800-acre area known as the Rialto Ammunition Backup Storage Point ("RABSP") which included an area in the City of Rialto known as the 160-Acre Parcel. *City of Colton v. Am. Promotional Events, Inc.* (C.D. Cal. 2011) 824 F.Supp.2d 1015, 1018 ("*Colton*").

37.    The Department of Defense transformed what had been remote, undeveloped land into a massive storage depot for munitions that contained perchlorate—a key staging area for railcars carrying munitions to the Port of Los Angeles for deployment overseas during World War II.

38.    During this period, the United States unloaded, loaded, stored, repaired, and destroyed thousands of tons of its perchlorate-fortified flares and munitions in

the RABSP, a generation before stringent environmental regulations were instituted to govern such activities.

39.    Approximately 200,000 tons of explosives, ordnance, and ammunition moved through the RABSP under the control of the United States.  Those munitions were packed into 8,000 railcars, and about 10,000 tons of those explosives, ordnance, and ammunition contained perchlorate.  Perchlorate-fortified munitions that went through the RABSP included, among other things: 81-millimeter mortar projectiles containing over 12% potassium perchlorate; 22-millimeter cartridges containing 36% potassium perchlorate; 35-millimeter rockets containing 64% potassium perchlorate; and 40-millimeter grenades containing 68% potassium perchlorate.  Aside from the munitions that the United States moved through the RABSP, an additional 7,746 tons of ammunition was returned from overseas to the RABSP, where it was repaired or destroyed.

40.    In May 1944, the United States Army admitted that the RABSP was "being operated in violation of ordnance safety rules" because the number of munitions-laden railcars on site far outstripped its capacity to hold such cars.  The United States warned that the RABSP had a capacity for a mere 32 munitions-laden railcars, yet regularly held more than 150 such railcars.  A safety bulletin published when the RABSP was operating specifically warned that munitions moved by railcar often arrived damaged, even "crushed," with "powder strewn on the floor of the of the car."

41.    Shortly after the war ended, the United States turned over the 2,800-acre RABSP area to private parties for commercial use. *Colton, supra,* 824 F.Supp.2d at p. 1018.

**B.    The RFF Superfund Site Is Being Remediated Under USEPA Direction and in Accordance with CERCLA**

42.    On September 23, 2009, USEPA listed the 160-Acre Parcel as the B.F. Goodrich Superfund Site (and later renamed it as the RFF Superfund Site) on the

National Priorities List upon a finding that historical waste disposal activities at the 160-Acre Parcel released hazardous substances into the soil and groundwater, thereby assuming jurisdiction over its cleanup as authorized by CERCLA. 74 Fed. Reg. 48412.

43.    USEPA divided the RFF Superfund Site into multiple "operable units" to address distinct geographic areas and specific problems.  On January 25, 2010, USEPA completed and published an RI/FS for OU1 and solicited comments from interested parties.

44.    On March 8, 2010, the City submitted its comments to USEPA's January 2010 RI/FS Report.  The City claimed in its comments that perchlorate contamination from the RFF Superfund Site had traveled "into the Riverside [groundwater] basin, thereby impacting Riverside's wells."

45.    On September 30, 2010, and in response to the City's comments, USEPA published its USEPA Superfund Interim Action Record of Decision" ("2010 Interim ROD") for OU1 and stated (1) a remedial investigation was being conducted to determine the downgradient extent of perchlorate from the RFF Superfund Site; (2) the data collected did not support the City's claim that perchlorate had reached its wells; and (3) information submitted by the City would continue to be considered. USEPA's 2010 Interim ROD also selected the remedial action for OU1, a groundwater extraction and treatment system to intercept and remove perchlorate from groundwater in a target area approximately 1,500 feet downgradient of the RFF Superfund Site.

46.    The RI/FS for the Mid-Basin Operable Unit ("OU2") was completed in two phases.  Goodrich completed the RI in 2013 and the FS in June 2021.  USEPA published these documents in January 2022.

47.    The City also submitted comments for OU2, to which USEPA responded.  In pertinent part, the City first requested that USEPA characterize the contamination plume and provide safeguards to prevent further migration of the

plume into the Rialto/Colton Groundwater Basin and the Flume Wells. USEPA agreed that more work was needed to characterize the area of groundwater contamination that had already moved beyond the area targeted by USEPA's selected remedy but noted that there was not sufficient data to conclude that contaminated water from the RFF Superfund Site traveled into the Rialto/Colton Groundwater Basin. Second, the City explained its water infrastructure, including the location of its Flume Wells in relation to the RFF Superfund Site, and summarized its state court lawsuit. USEPA noted that it would "consider the information provided…as it conducts the RI/FS for the area of groundwater contamination downgradient of the SA OU." Third, the City stated that it detected perchlorate in one of its wells approximately seven miles downgradient of the RFF Superfund Site. USEPA responded that the available data did not support the conclusion that contaminated groundwater from the RFF Superfund Site migrated seven miles, but USEPA would continue to investigate the downgradient extent of contamination and consider the sampling results generated by the City. Fourth, the City recommended that USEPA conduct a controlled pump test to calculate travel time of the perchlorate plume and predicted that perchlorate may be detected in the Flume Wells by 2014, assuming a groundwater flow velocity of five feet per day. USEPA disagreed with the City's estimation and again explained that the available data did not support a conclusion that contamination from the RFF Superfund Site reached the City's Flume Wells. USEPA also stated that it was conducting RI activities to determine what additional cleanup efforts are needed, and those will likely include pump tests similar to those recommended by the City. Notably, the City did not ask USEPA to remediate perchlorate in its Flume Wells, nor did USEPA authorize the City to undertake such actions.

48.    On September 2, 2022, USEPA published the 2022 ROD, selecting the remedial action for OU2: "a groundwater extraction and treatment system intended to protect human health by preventing exposure to groundwater affected by [RFF

Superfund] Site contaminants, protect drinking water supply wells threatened by Site-related contamination, and protect and restore the groundwater resource . . . . [T]his second remedy addresses contaminated groundwater that has moved past (i.e., downgradient of) the area targeted by EPA's SAOU [OU1]."

## C.     The Consolidated Federal Actions

49.     Beginning in 2004, multiple complaints were filed in this Court concerning perchlorate contamination in the Rialto/Colton Groundwater Basin, which were consolidated. *Colton, supra,* 824 F.Supp.2d at pp. 1018, 1022.  The Consolidated Federal Actions involved the City of Colton, the City of Rialto, the County of San Bernardino, USEPA, the Department of Defense, and other private party defendants including the Plaintiffs filing the instant Complaint.  The City was not a party to the Consolidated Federal Actions.

50.     In 2012-2013, the Consolidated Federal Actions were resolved by settlement agreements memorialized in three Consent Decrees, entered on July 2, 2013 (for Goodrich, Emhart, APE, and Whittaker) and on March 18, 2013 (for Pyro Spectaculars), which provided for some of the defendants in those actions, the Department of Defense, and other parties to fund, or fund and implement cleanup (on an interim and final basis) of perchlorate contamination emanating from the RFF Superfund Site.  The Department of Defense agreed to substantial monetary obligations as part of the remedial activities currently undertaken by Plaintiffs pursuant to the Consent Decrees.

51.     The Consent Decrees defined the RFF Superfund Site to include "all areas where contamination from the 160-Acre Area otherwise comes to be located," consistent with the definition of "facility" in CERCLA section 101(9), 42 U.S.C. section 9601(9).

52.     This Court retained jurisdiction over the subject matter of the Consent Decrees and the parties to the Consent Decrees, so that the parties may "apply to the Court at any time for such further order, direction, and relief as may be necessary or

1  appropriate for the construction or modification of this Consent Decree, or to
2  effectuate or enforce compliance with its terms . . . ."

3  **D.    The City's State Court Action**

4         53.    The City filed the State Court Action on April 1, 2009, in Los Angeles
5  County Superior Court (Case No.: BC376008 [Consolidated with Case Nos.
6  BC410878 and BC472949]).  The City named the Plaintiffs and other private entities
7  as defendants, seeking "to recover compensatory and all other damages, including all
8  necessary funds to remove perchlorate from public drinking water supplies, as
9  needed, to investigate, monitor, remediate, or contain perchlorate contamination."

10        54.    The City asserts in the State Court Action that its water supply wells
11  known as the Flume Wells have been impacted by perchlorate released at the RFF
12  Superfund Site.

13        55.    The City's State Court Action was stayed on May 9, 2009, during the
14  pendency of the Consolidated Federal Actions.

15        56.    Following entry of the Consent Decrees in the Consolidated Federal
16  Actions, the stay in the City's State Court Action was lifted on September 12, 2014,
17  and the City filed its operative First Amended Complaint on March 18, 2018,
18  seeking as damages its past costs to investigate and monitor, and future costs to
19  remediate, perchlorate in its Flume Wells.

20        57.    On June 12, 2018, the City's State Court Action was dismissed without
21  prejudice in response to a demurrer brought by Goodrich and other named
22  defendants in that action contending that the United States was a necessary and
23  indispensable party pursuant to Code of Civil Procedure section 389 but could not be
24  brought into the State Court Action because of sovereign immunity.

25        58.    On May 6, 2020, the dismissal of the City's First Amended Complaint
26  was reversed by the Court of Appeal, and the remittitur was issued on July 30, 2020,
27  to remand the State Court Action to the trial court.  The case remains pending in Los
28  Angeles County Superior Court.

59.     On October 31, 2022, Plaintiffs filed a motion to dismiss the City's State Court Action without prejudice under CERCLA section 122(e)(6).  Plaintiffs argued that the City is an alleged PRP, because it asserts in its First Amended Complaint that it owns wells that have been contaminated by perchlorate originating from the RFF Superfund Site.  Plaintiffs argued that if, as the City contends, its wells have been affected by contamination from the RFF Superfund Site, then those wells are part of the RFF Superfund Site "facility" as a matter of law.  Because USEPA has not approved the remediation the City seeks, the City may not undertake remedial action or recover related tort damages for any contamination that allegedly originated at the RFF Superfund Site.

60.     In a January 30, 2023, ruling, the state court agreed that the City is a PRP and thus subject to CERCLA section 122(e)(6).  However, the state court stated that the long-term perchlorate treatment system that the City claims it might implement is not a "remedial action" and therefore is not covered by section 122(e)(6).  In reaching this non-final ruling the superior court disregarded the robust body of caselaw distinguishing "removal actions," which are short-term, time-sensitive actions taken in response to an imminent threat to public health, from "remedial actions," which are long-term, permanent cleanups like the one the City claims it will pursue.  Certain Plaintiffs filed a petition for writ of mandate in the Court of Appeal, which was dismissed on May 12, 2023, on the grounds that the need for "extraordinary writ relief" had not been shown.

61.     The State Court Action was thereafter stayed on January 25, 2024, pursuant to stipulation of the parties, to accommodate the filing of initial pleadings in this action.

E.     **Federal Law Bars the City, as an alleged PRP, From Conducting Remedial Action at a Superfund Site Without USEPA Approval**

62.     CERCLA section 122(e)(6) provides:

---
17

When either the President,[2] or a potentially responsible party pursuant to an administrative order or consent decree under this Act, has initiated a remedial investigation and feasibility study for a particular facility under this Act, ***no potentially responsible party may undertake any remedial action at the facility*** unless such remedial action has been authorized by the President. (emphasis added.)

63.    The Supreme Court considered the application of section 122(e)(6) in *Atlantic Richfield*. That case involved arsenic and lead contamination from a former copper smelter in Montana. USEPA had worked with the current owner of the smelter, Atlantic Richfield, for decades to develop and implement a cleanup plan under CERCLA. A group of 98 landowners whose residential properties were affected by the contamination sued Atlantic Richfield in Montana state court for nuisance, trespass, and strict liability, and sought restoration damages to implement remediation beyond the cleanup plan imposed by USEPA, which the agency had found to be protective of human health and the environment.

64.    First, the Supreme Court held that the landowners qualified as PRPs under CERCLA section 122(e)(6) because each was an "owner"[3] of a "facility." *Id.* at 1352. This was based on CERCLA's definition of "facility," which includes "any site or area where a hazardous substance has . . . come to be located." *Id.* (quoting 42 U.S.C. § 9601(9)(B)). Because arsenic and lead from the smelter had "come to be located" on the landowners' properties, their properties were necessarily part of the "facility." *Id.* The determination of what constitutes a "facility" and a "PRP"

---

[2] As authorized by CERCLA section 115, the President delegated the response authorities of CERCLA to USEPA and other federal agencies by Executive Order. 42 U.S.C. § 9615; Executive Order 12580, Superfund Implementation, January 23, 1987, 52 Federal Register 2923.

[3] CERCLA section 107 defines four classes of "Covered persons," i.e., PRPs, and provides that they "shall be liable" for various cleanup-related costs. 42 U.S.C. § 9607(a). The first category includes any "owner" of a "facility." *Id.* at § 9607(a)(1). The use of "PRP" in section 122(e)(6) refers to the categories of "Covered persons" identified in 42 U.S.C. § 9607(a). *Atl. Richfield*, 140 S.Ct. at 1353-54.

COMPLAINT FOR RECOVERY OF RESPONSE COSTS AND DECLARATORY RELIEF

under CERCLA is based on the respective statutory definitions of these terms, which operate regardless of any action or determination by USEPA. *Id.* ("To determine who is a potentially responsible party, we look to the list of 'covered persons' in §107.").

65.     Second, as PRPs, the Supreme Court held the landowners could not implement their proposed remediation plan without approval from USEPA under section 122(e)(6), because an RI/FS had been completed and the landowners had not obtained USEPA approval.  Third, section 122(e)(6) in turn precluded the landowners from recovering the restoration damages they sought, which, under Montana law, had to be "used to repair the damaged property" and thus constituted "remedial action" under section 122(e)(6).  *Atl. Richfield*, 140 S.Ct. at 1357.

66.     CERCLA defines "remedial action" to include the "'cleanup of released hazardous substances and associated contaminated materials.'" *Atl. Richfield*, 140 S.Ct. at 1354 (quoting 42 U.S.C. § 9601(24)).  The caselaw further establishes that "remedial actions" constitute long-term permanent cleanups, as opposed to "removal actions," which are short-term time-sensitive actions taken in response to an imminent public health threat.

67.     The Supreme Court explained that the USEPA approval requirement under section 122(e)(6) "could ameliorate any conflict between the landowners' restoration plan and EPA's Superfund cleanup, just as Congress envisioned." *Id.* Likewise, the Supreme Court recognized that section 122(e)(6) is "one of the Act's crucial tools for ensuring an orderly cleanup of toxic waste," which serves an important public interest by ensuring "the careful development of a single EPA-led cleanup effort rather than tens of thousands of competing individual ones." *Id.* at 1344 and 1355.

**F.     The Remedial Action Sought By the City Is Precluded By CERCLA**

68.     If the contamination in the City's Flume Wells originated from the RFF Superfund Site, as alleged by the City, the City is pursuing remediation in the State

Court Action that is barred by federal law.

69.     In accordance with section 122(e)(6), the City may not conduct any remedial action to address alleged contamination from the RFF Superfund Site (or recover related damages) without USEPA approval because (1) based on the City's allegations, RFF Superfund Site contamination has come to be located in the Flume Wells owned by the City; (2) the City is thus a PRP as an alleged "owner" of a "facility," i.e., the City alleges that it owns property affected by contamination from the RFF Superfund Site; (3) an RI/FS for the RFF Superfund Site has been completed; and (4) USEPA has not approved the remediation systems for the Flume Wells sought by the City in the State Court Action.

70.     Under *Atlantic Richfield*, CERCLA section 122(e)(6) precludes the City from conducting remediation *or* pursuing state law tort claims for damages and/or abatement to cleanup contamination allegedly from the RFF Superfund Site unless (1) USEPA has approved the proposed remedial action or (2) the RFF Superfund Site is removed from the National Priorities List and is no longer a Superfund Site. *Atl. Richfield*, 140 S.Ct. at 1354 (noting that section 122(e)(6) "applies only to sites on the Superfund list" and that "EPA delists Superfund sites once responsible parties have taken all appropriate remedial action and the pollutant no longer poses a significant threat to public health or the environment.").

71.     If USEPA were in the future to determine that RFF Superfund Site contamination has affected the Flume Wells, the CERCLA remedy would be expanded to include those wells, and the government would be required to address the contamination as part of its Superfund cleanup program.  Alternatively, if USEPA does not in the future determine the Flume Wells have been contaminated by the RFF Superfund Site, then CERCLA section 122(e)(6) will prohibit any remedial action to address alleged RFF Superfund Site contamination until the RFF Superfund Site is delisted by USEPA—a process which could take many years to complete.

72.    The relief sought in this action would not impair the City's ability to obtain a final decision in its State Court Action.  If this Court issues an order that neither the City nor any other PRP may undertake remedial action of alleged RFF Superfund Site contamination without USEPA approval, the City could then seek the requisite USEPA approval and, if given by USEPA, proceed with its claims for future costs of treatment systems it has not installed or even decided are necessary to install.  Alternatively, if USEPA approval is not obtained, the City may pursue its tort claims after the RFF Superfund Site is removed from the National Priorities List and no longer is a Superfund site.  This action simply seeks a judicial declaration regarding a threshold issue of federal law, in federal court, and with participation by the United States, which is charged through USEPA with determining what remedial action may be conducted in a Superfund site.

73.    The United States, through USEPA, is aware of the State Court Action against Plaintiffs seeking to recover damages to conduct remediation of the City's Flume Wells for contamination the City claims is originating from the RFF Superfund Site.  USEPA, as the agency charged with enforcing federal law, has not taken any steps to ensure that the City complies with CERCLA section 122(e)(6) or *Atlantic Richfield*.

74.    Therefore, the requested judicial declaration is necessary to address a dispute arising exclusively under federal law regarding the authority of USEPA to control Superfund sites, select a uniform remedy, and ensure that inconsistent remedies do not worsen the problem that legacy contamination poses to the environment or public health or overburden stakeholders with costs of investigation and cleanup that are unnecessary or counterproductive.

G.    **Plaintiffs Have Initiated Response Activities Related to the City's Wells**

75.    Plaintiffs have initiated response activities to investigate and assess potential releases of perchlorate by the City through the City's discharges of water containing perchlorate from the Flume Wells and the John W. North Water

Treatment Plant into the environment in the vicinity of the Flume Wells and into the Riverside Canal.

76.    Given the conflicting positions by the City and USEPA as to whether contamination from the RFF Superfund Site is affecting the City's Flume Wells, Plaintiffs have incurred response costs investigating releases or threatened releases of perchlorate into the environment in the vicinity of the City's Flume Wells consistent with the NCP.  Plaintiffs are evaluating the City's Flume Wells to characterize areas of potential environmental contamination and identify potential sources of contamination in the vicinity of the Flume Wells.  As described herein, Plaintiffs' response activities include retaining a technical consultant to conduct a Preliminary Assessment ("PA") in accordance with 40 C.F.R. section 300.420 and collecting and analyzing data from recently sampled water taken from the City's Flume Wells and other areas to determine potential sources, pathways of exposure, and the source and nature of the alleged releases.  These incurred NCP-compliant response costs are separate and apart from the work required by the July 2, 2013, Consent Decrees, which govern the responsibilities for the parties that are implementing the cleanup (on an interim and final basis) of groundwater contamination emanating from the RFF Superfund Site.

77.    Plaintiffs are independently conducting a PA and sampling and have not been ordered by any court or USEPA to perform such work.  Plaintiffs are doing so to assess the City's releases or threatened releases of perchlorate and other contamination to the City's Flume Wells, to assess the magnitude of the actual or threatened releases, and to assess the necessity of any potential remedial action, in substantial compliance with the NCP, 40 C.F.R. sections 300.400 and 300.700.

78.    Given the conflicting positions taken by the City and by USEPA, Plaintiffs have initiated an independent (and necessary) investigation consistent with the NCP regarding the threatened release of perchlorate into the environment in the vicinity of the City's Flume Wells, and to evaluate and identify the contaminants in

the City's Flume Wells and their potential sources.

79.     Plaintiffs will continue to conduct response activities consistent with the NCP to evaluate the condition of the City's Flume Wells and the sources of any contamination to those wells, including to identify potential sources unrelated to the RFF Superfund Site and any necessary remediation activities to respond to any threats to human health or the environment.

80.     Perchlorate is a "hazardous substance" as defined in CERCLA.

81.     Under CERCLA a facility is defined to include: "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, *or otherwise come to be located*."  42 U.S.C. § 9601(9) (emphasis added).

82.     Based on the City's allegations in the State Court Action, its Flume Wells are a "facility" under CERCLA.

**H.     Plaintiffs' Presentation of Their Claims to the City**

83.     California Government Code section 945.4 does not apply to federal claims, such as CERCLA.  *Williams v. San Jose*, No. 91-15093, 1992 U.S. App. LEXIS 4426, at *3 n.22 (9th Cir. Mar. 11, 1992 ["California does not attempt to regulate the filing of federal claims. . . Nor could it."].)  Regardless of its applicability, Plaintiffs have substantially complied with section 945.4 by providing multiple written and oral communications informing the City of Plaintiffs' intent to file CERCLA claims against the City and the nature of those claims more than 45 days prior to filing this Complaint, including in a Joint Case Management Statement filed on June 7, 2023, during a Case Management Conference held on June 14, 2023, in correspondence on October 23, 2023, and in a Stipulation to Stay the State Court Action filed on January 24, 2024.

**FIRST CAUSE OF ACTION**

**(Claim for Cost Recovery Under Section 107(a) of CERCLA,**

**42 U.S.C. § 9607(a))**

**Against City of Riverside**

84.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 83 above as though fully set forth herein.

85.    CERCLA section 107(a), 42 U.S.C. section 9607(a), provides in part that the owner and/or operator of a facility, from which there is a release or threatened release of a hazardous substance which causes the incurrence of response costs, shall be liable for any necessary costs of response incurred by any other person consistent with the NCP, 40 C.F.R. Part 300.

86.    Any area where a hazardous substance has come to be located is a "facility" within the meaning of CERCLA section 101(9), 42 U.S.C. section 9601(9).

87.    The City's Flume Wells and John W. North Water Treatment Plant are a "facility" under CERCLA.

88.    Perchlorate is mobile in groundwater.

89.    The City is and was the owner and operator of the Flume Wells and nearby John W. North Water Treatment Plant (that does not remove perchlorate) at the time from which there was a release or threatened release of perchlorate into the environment in the vicinity of the Flume Wells.

90.    Plaintiffs are each a "person" for purposes of the recovery of response costs under CERCLA section 107(a), 42 U.S.C. section 9607(a).

91.    Plaintiffs have incurred necessary costs of response consistent with the NCP, 40 C.F.R. Part 300, that, on information and belief, are due to the release and/or threatened release of perchlorate into the environment in the vicinity of the Flume Wells, within the meaning of CERCLA section 101(25), 42 U.S.C. section 9601(25).

92.    Plaintiffs will continue to incur necessary costs of response consistent with the NCP to investigate and/or remediate the release or threatened release of perchlorate to the City's Flume Wells.

93.    The City is liable, without regard to fault, for response costs incurred by

COMPLAINT FOR RECOVERY OF RESPONSE COSTS AND DECLARATORY RELIEF

Plaintiffs, in accordance with CERCLA section 107(a), 42 U.S.C. section 9607(a).

## SECOND CAUSE OF ACTION

### (Claim for Declaratory Relief Under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2))

### Against City of Riverside

94.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 83 above as though fully set forth herein.

95.    Under CERCLA section 113(g)(2), 42 U.S.C. section 9613(g)(2), Plaintiffs are entitled to a declaratory judgment that the City is liable to Plaintiffs for any response costs that Plaintiffs have incurred and for any further response costs that Plaintiffs incur in the future as a result of any release or threatened release of perchlorate in the vicinity of the City's Flume Wells that are separate and apart from the work required by the July 2, 2013 Consent Decrees.

## THIRD CAUSE OF ACTION

### (Claim for Declaratory Relief Pursuant to 28 U.S.C. § 2201)

### Against All Defendants

96.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 83 above as though fully set forth herein.

97.    The City contends that contamination from the RFF Superfund Site has impacted the City's Flume Wells, and the City filed the State Court Action seeking an order requiring Plaintiffs and other private entities to fund remediation of those wells.

98.    Remediation at the RFF Superfund Site is overseen and directed by USEPA, which serves as the lead federal agency responsible for the cleanup. The RFF Superfund Site was listed on the National Priorities List in 2009, and an RI/FS has been conducted for the RFF Superfund Site. USEPA determined in the CERCLA administrative process that there was not sufficient data to support the

City's conclusion that contamination from the RFF Superfund Site is affecting the City's Flume Wells.

99.    CERCLA section 122(e)(6), 42 U.S.C. section 9622(e)(6), provides that where an RI/FS has been initiated for a Superfund site, no PRP may conduct remedial action at the Superfund site that has not been approved by USEPA.  The City is a PRP as the "owner" and "operator" of a "facility" under CERCLA.  The City owns wells that the City contends have been contaminated by the RFF Superfund Site. 42 U.S.C. §§ 9601(9), (20)(A); 9607(a)(1).  USEPA has not approved any remediation of the Flume Wells by the City.

100.    The United States, through USEPA, is aware of the City's State Court Action against Plaintiffs seeking remediation of the City's Flume Wells for contamination the City claims is originating from RFF Superfund Site.  USEPA, as the agency charged with enforcing federal law, has not taken steps to ensure the City complies with CERCLA section 122(e)(6) or *Atlantic Richfield* in seeking remediation of alleged RFF Superfund Site contamination in its wells.  The United States cannot be sued in the state court action.

101.    An actual, present, and justiciable controversy has arisen between Plaintiffs, the City, and the United States regarding whether: (1) the City may conduct remedial action to address alleged RFF Superfund Site contamination without USEPA approval, and whether (2) the City's alleged future perchlorate treatment systems are "remedial action" as defined in CERCLA section 122(e)(6).

102.    Plaintiffs seek a declaratory judgment from this Court that the City's alleged future perchlorate treatment systems to address contamination in the City's Flume Wells are "remedial action" as defined in CERCLA section 122(e)(6), and that the City is prohibited by CERCLA section 122(e)(6), 42 U.S.C. section 9622(e)(6), from conducting any remedial action to address contamination in the Flume Wells alleged to have originated from RFF Superfund Site unless and until (1) USEPA approves the treatment systems sought by the City, or (2) the RFF

Superfund Site is removed from the National Priorities List by USEPA and thus is no longer a Superfund site.

103.    Federal courts are vested with exclusive jurisdiction to determine cases and controversies arising under CERCLA. 42 U.S.C. § 9613(b).

104.    The declaratory judgment requested by Plaintiffs would not prohibit the City from conducting remediation at the Flume Wells if the City withdraws its contentions that any contamination in those wells originated from the RFF Superfund Site.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for relief as follows:

A.    For a judgment that the City is liable to Plaintiffs under CERCLA section 107(a), 42 U.S.C. section 9607(a), for all response costs incurred by Plaintiffs in responding to the release or threatened release of perchlorate from the City's Flume Wells and J.W. North Treatment facility in the vicinity of the City's Flume Wells.

B.    For a declaratory judgment, pursuant to CERCLA section 113(g)(2), 42 U.S.C. section 9613(g)(2), that the City is liable to Plaintiffs, without regard to fault, for all response costs incurred or to be incurred by Plaintiffs to respond to the City's release or threatened release of perchlorate from the City's Flume Wells and J.W. North Treatment facility in the vicinity of the City's Flume Wells.

C.    For a judicial declaration, pursuant to 28 U.S.C. section 2201, that the City is prohibited by CERCLA section 122(e)(6), 42 U.S.C. section 9622(e)(6), from conducting any remedial action to address contamination in the City's Flume Wells originating from the RFF Superfund Site unless and until (1) USEPA approves the remedial action sought by the City or (2) the RFF Superfund Site is removed

from the National Priorities List by USEPA and is no longer a

Superfund site;

D.    For a judicial declaration, pursuant to 28 U.S.C. section 2201, that the

City's alleged future perchlorate treatment systems to address

contamination in the City's Flume Wells are "remedial action" as

defined in CERCLA section 122(e)(6).

E.    Prejudgment interest pursuant to CERCLA section 107(a);

F.    For costs of suit; and

G.    For any and all other relief the Court deems just and proper.

Respectfully submitted,

Dated:  December 13, 2024      JEFFREY D. DINTZER
JEFFREY P. CARLIN
**ALSTON & BIRD LLP**

By:  /s/ *Jeffrey D. Dintzer*
Jeffrey D. Dintzer (SBN 139056)
Jeffrey P. Carlin (SBN 227539)
Attorneys for Plaintiff
GOODRICH CORPORATION

Dated:  December 13, 2024      KAMRAN JAVANDEL
EMILY L. MURRAY
**ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP**

By:  /s/ *Kamran Javandel*
Kamran Javandel (SBN 272900)
Emily L. Murray (SBN 223815)
Jordan L. Wright (SBN 352005)
Attorneys for Plaintiff
EMHART INDUSTRIES, INC., KWIKSET
LOCKS, INC., and BLACK & DECKER,
INC.

1  Dated: December 13, 2024                BRIAN L. ZAGON
                                           ALLISON MCADAM
2                                          ETHAN C. NOCERA
                                           **VAN NESS FELDMAN LLP**
3
                                           By:  /s/ *Brian L. Zagon*
4                                               _____
                                                Brian L. Zagon (SBN 142403)
                                                Allison McAdam (SBN 226836)
5                                               Ethan C. Nocera (SBN 338664)
                                           Attorneys for Plaintiff
6                                          PYRO SPECTACULARS, INC.

7
   Dated: December 13, 2024                STEVEN H. GOLDBERG
8                                          BAO VU
                                           MONICA M. BROWNER
9                                          **STOEL RIVES LLP**

10                                         By:  /s/ *Steven H. Goldberg*
                                                _____
11                                              Steven H. Goldberg (SBN 140039)
                                                Bao Vu (SBN 277970)
                                                Monica M. Browner (SBN 329717)
12                                         Attorneys for Plaintiff
                                           AMERICAN PROMOTIONAL EVENTS,
13                                         INC.-WEST

14 Dated: December 13, 2024                MATTHEW C. BURES
                                           ROGER R. BRACKEN
15                                         **WOLFE & WYMAN LLP**

16                                         By:  /s/ *Matthew C. Bures*
                                                _____
17                                              Matthew C. Bures (SBN 143361)
                                                Roger R. Bracken (SBN 284078)
                                           Attorney for Plaintiff
18                                         WHITTAKER CORPORATION

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR RECOVERY OF RESPONSE COSTS AND DECLARATORY RELIEF